**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | Civil Action No.: 8-1391 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| MANHATTANVIEW OPERATIONS, LLC, d/b/a MANHATTANVIEW HEALTHCARE CENTER; BROADWAY HEALTHCARE MANAGEMENT, LCC; BROADWAY NUTRITIONAL SERVICES, LLC; and MICHAEL KONIG., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Thomas E. Perez, Secretary of Labor, United States Department of Labor ("Plaintiff," "DOL," or "the Secretary")'s Motion for an Order Awarding Back Wages and Compensatory Fine. (ECF No. 51, "Mot."). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Plaintiff's Motion.

## **BACKGROUND**

Plaintiff originally filed an action on March 17, 2008, against the above-captioned Defendants seeking to restrain same from violating Sections 7, 11(c), 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act ("FLSA") and seeking payment of unpaid overtime compensation. (ECF No. 1, "Compl.") (citing 29 U.S.C. § 201 *et seq.*). On November 23, 2009, this Court "So Ordered" a Consent Judgement, which, among other provisions, permanently enjoined Defendants from

violating the aforesaid provisions of the FLSA. (ECF No. 26, "Consent Judgment"). Nearly three years later, on December 13, 2012, Plaintiff filed an unopposed Petition to hold Defendants in contempt for their failure to comply with the Consent Judgment. In said Petition, Plaintiff averred that since November 23, 2009, Defendants have violated the terms of the Consent Judgment by:

> (1) fail[ing] to compensate employees at the statutorily-required premium rate of time and one-half their regular straight-time hourly rate of pay for hours worked over 40 in a workweek; (2) fail[ing] to include bonuses in calculating employees' regular straight-time hourly rate(s) of pay in certain instances when overtime compensation was paid; and (3) fail[ing] to compensate employees for all hours worked all in contravention of the injunction entered against violations of sections 7 and 15(a)(2) of the [FLSA].

(ECF No. 28 at ¶ 5).

Defendants did not oppose the Petition, and on March 18, 2013, this Court granted Plaintiff's petition and found Defendants in civil contempt for failing to comply with the November 23, 2009 Consent Judgment. (ECF No. 34, "Contempt Order"). Specifically, the Court further ordered that:

1. Defendants may purge themselves of contempt only by paying unpaid back wages to those employees to whom they have failed to pay proper overtime compensation since November 23, 2009;

2. Within 20 days of the entry of [the March 18, 2013 Order], Defendants produce all records of wages paid and employee hours worked for the period of November 23, 2009 through the present to the U.S. Department of Labor;

3. Defendants pay for the costs and expenses of an independent auditor to review the produced records and determine the total amount of unpaid overtime compensation due to employees, and;

4. Defendants pay a compensatory fine equal to the costs and expenses incurred by the U.S. Department of Labor investigation this matter.

(Contempt Order at 2). The Court further advised Defendants that they may be subject "to the attachment and sequestration of personal property" for failure to comply with the terms of the March 18, 2013 Contempt Order. (Id.).

On May 24, 2013, Plaintiff filed an unopposed motion for sanctions, alleging that Defendants failed to comply with the Contempt Order.  (ECF No. 35).  This Court granted Plaintiff's motion, finding that Defendants had failed to produce all wage and time records to the Department of Labor, and Ordered:

> Defendants [to] pay a coercive fine of $200.00 per day from the date of entry of this Order until such date that Defendants fully comply with the March 18 Order requiring them to produce all records of wages paid and employee hours worked for the period of November 23, 2009 through the present to the U.S. Department of Labor.

(ECF No. 37, "Sanctions Order" at 3).

Plaintiff concedes that "Defendants did eventually produce some time and pay records in 2013," but state that there were still many records missing for the years 2009 through 2011.  (Mot. at 4).  On February 18, 2014, Plaintiff served a subpoena on Prime Services/D.S., Inc. ("Prime"), the "payroll company used by Defendants to record overtime hours worked by employees at some of the nursing homes" because Defendants allegedly "failed to produce any time or pay records kept under Prime."  Id.  Prime ultimately "produced 'Employee Ledgers' for 83 of Defendants' employees" on or about March 26, 2014.  Id.

Plaintiff moved for an Order to Show Cause Petition to Compel Production of Documents and Further Adjudication of Contempt on May 13, 2014.  (ECF No. 43).  This matter was then reassigned to Magistrate Judge Joseph Dixon, who ordered the parties to appear at an in-person conference on July 3, 2014.  (ECF No. 44).   Judge Dickson ordered Defendant Konig, who failed to appear at the July 3, 2014 conference, to appear for a deposition, which he did on July 23, 2014. (Mot. at 5).   Plaintiff's Motion was denied as moot on July 28, 2014 (ECF No. 50), following a status letter from Plaintiff that stated:

> Mr. Konig testified under oath that the Defendants have produced all of the records in their possession. Based on Mr. Konig's testimony, the Secretary will perform back wage calculations using the records received from Defendants and Prime Services/D.S., Inc.

Once the back wage computations are complete, the Secretary will file a motion with the Court for an order awarding back wages to employees and imposing a compensatory fine against Defendants equal to the costs and expenses incurred by the Secretary in investigating this matter.

(ECF No. 49).

On August 18, 2015, Plaintiff filed the instant motion for an Order Awarding Back Wages and Compensatory Fine. True to Plaintiff's July 28, 2014 letter, Plaintiff has performed back wage calculations using the records received from Defendants and Prime. (Mot. at 10). Based upon those calculations, Plaintiff seeks an award of $636,410.13 in overtime back wages to current and former employees, plus prejudgment and post-judgment interest, as well as $97,388.13 for the costs and expenses Plaintiff incurred in investigating this matter. (Mot. at 1-2). Defendants have filed a three page letter brief in opposition to this motion, in which they do not cite to any case law.[1] (ECF No. 59, "Defs.' Opp. Ltr).

## LEGAL STANDARD

"Civil contempt is designed to benefit the injured plaintiff by ensuring compliance with the court's orders and providing remedial damages to parties injured by the contemnor." *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991). "Courts thus have embraced an inherent contempt authority . . . as a power necessary to the exercise of all others." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831, (1994) (internal quotations and citations omitted). The Third Circuit has also held that "[t]he framing of sanctions for civil contempt is committed to the sound discretion of the trial court." *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992). This discretion extends to employment cases, as "courts regularly hold employers

---

[1] Defendants request that this Court refer the matter for alternative dispute resolution. (Defs.' Opp. Ltr at 1). Given that this Court previously entered a Consent Judgment after negotiations, and given the Defendants' continued contempt of this Judgment, the Court finds that referral to alternative dispute resolution would not be fruitful in bringing this matter to resolution.

in civil contempt when they disregard injunctions against violation of the minimum and overtime wage rates required by the Fair Labor Standards Act." *Roe v. Operation Rescue*, 919 F.2d 857, 872 (3d Cir. 1990); *see also Hodgson v. Hotard*, 436 F.2d 1110, 1114 (5th Cir. 1971) ("That a civil contempt proceeding is a proper means for ensuring compliance with, and effecting the policies of, the Fair Labor Standards Act seems indisputable."). In order to "'purge' themselves of their contempt, courts routinely order [the] employers to pay the amounts due to employees under the courts' earlier orders." *Roe*, 919 F.2d at 872; *see also McComb v. Jackson Paper Co.*, 336 U.S. 187, 193 (1949) ("We have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree [relating to violations of the FLSA].").

## ANALYSIS

On March 18, 2013, this Court found Defendants to be in contempt of its November 23, 2009 Consent Judgment, and advised that "Defendants may purge themselves of contempt only by paying unpaid back wages to those employees to whom they have failed to pay proper overtime compensation since November 23, 2009." (Contempt Order at 2). The Court further instructed the Defendants to "produce all records of wages paid and employee hours worked for the period of November 23, 2009 through the present to the U.S. Department of Labor" within twenty days of the entry of that Order. (Id.) When Defendants still failed to produce records of wages paid and employee hours worked, this Court granted Plaintiff's motion for sanctions, thereby requiring Defendants to pay a coercive fine of $200 per each day that Defendants fail to submit complete records in compliance with this Court's Contempt Order. (Sanctions Order). Thereafter, Defendants produce some records, which Plaintiff alleges are nonetheless incomplete. (Mot. at 5).

Per Plaintiff's July 28, 2014 status letter to Magistrate Judge Dickson, upon review of the incomplete records produced by Defendants, as well as the records subpoenaed by third-party Prime, Plaintiff computed an estimated amount of unpaid back wages of $636,410.13. Accordingly, Plaintiff now contends that, per this Court's Contempt Order, Defendants may only purge themselves of contempt by paying in back wages, plus pre and post judgment, allegedly owed to current and former employees of Defendants. This Court agrees.

### 1. Plaintiff's Calculation of Back Wages

Defendants take issue with the amount of back wages that Plaintiff alleges due. (Defs.' Opp. Ltr at 3). Specifically, Defendants state that "the DOL must come forth with more concrete evidence to sustain the relief requested before the entry of an award that would obliterate Defendants and those facilities employing the workers in question." (Id.).

The burden of proving unpaid wages generally lies on the employee claiming a violation of the FLSA. However, the Supreme Court has held that where an employer fails to maintain records in compliance with his or her statutory duty, "an employee has carried out his burden if he proves that he has in fact performed work of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84; *see also Martin v. Selker Bros., Inc.* 949 F.2d 1286, 1296-97 (3d Cir. 1991). Upon such proof, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88. Where the employer cannot offer such evidence, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

6

Section 11(c) of the FLSA provides a clear mandate that employers must maintain reliable records of the wages and hours worked by employees. 29 U.S.C. § 211(c). Moreover, employers are to preserve such records for no less than three years. 29 C.F.R. § 516.5(a).

Here, the Department of Labor contends that Defendants have not provided complete employment records from 2009 through 2013 from which the Department can determine the precise amount of wages owed. (Mot. at 7). Notably, in their Opposition, Defendants do not dispute this point. (See Defs.' Opp. Ltr). Plaintiff's investigators approximated unpaid overtime by reviewing the records of overtime hours worked from Prime and the limited records produced by Defendants. (Mot. at 10) (citing Declaration of Linda Helmer, Investigator, DOL Wage and Hour Investigator, ¶¶ 7-10). Specifically, the Secretary used the subpoenaed records from Prime to determine the number of hours over forty that each employee worked, and multiplied that number "by the applicable half-time premium for each employee." (Mot. at 10-11). Plaintiff also used partial time records produced by Defendants to estimate, for each of Defendant's facilities, an average amount of unpaid time worked outside of the employees' scheduled shifts ("unpaid post-shift overtime"). The Secretary obtained an "average of the amount of [unpaid post-shift ] overtime for each location based on randomly-selected workweeks." (Mot. at 11) (citing to Helmer Decl. ¶¶ 13-14).

This Court finds that Plaintiff's calculations provide a reasonable inference of unpaid wages, particularly in light of Defendants' inability to maintain and provide adequate records as mandated by the FLSA as well as this Court's prior Orders. Moreover, Defendants have failed to come forward with sufficient evidence to negate the Department of Labor's calculations. Instead, Defendants argue that the "DOL must come forward with more concrete evidence" to support their calculation, but provide no case law in support of this heightened evidentiary requirement they

7

propose.  Nor have Defendants meaningfully challenged the method used by Plaintiff to calculate back wages owed, aside from claiming that that "the DOL relies on self-serving and incomplete charts and data wherein it admittedly guestimates the amount it believes Defendants owe." (Defs.' Opp. Ltr at 3).

Plaintiff also seeks pre and post-judgment interest on the back pay award.  (Mot. at 1-2).  A plaintiff seeking back wages under the FLSA is entitled to pre and post-judgment interest unless "the usual equities in favor of such interest are not applicable." *Pignataro v. Port Authority of New York and New Jersey*, 593 F.3d 265, 273-74 (3d Cir. 2010); *see also Brock v. Richardson*, 812 F.2d 121, 127 (3d Cir. 1987) ("We will apply the same presumption in favor of pre-judgment interest on a back pay award under the FLSA as we have just held applicable to post-judgment interest.").  However, because Plaintiff has not submitted a sum certain as to interest, this Court will Order that Plaintiff file same within seven (7) days of the entry of this Opinion and accompanying Order for the Court's review.

## 2.  Plaintiff's Calculation of Compensatory Fines

In addition to the unpaid wages discussed above, Plaintiff requests that this Court enter a compensatory fine against Defendants in the amount of $97,388.13, to account for the time and expenses the DOL sustained in investigating this matter over the past several years. (Mot. at 12-13).  Defendants argue that this amount is excessive, unreasonable, and unsubstantiated. (Defs.' Opp. Ltr at 3).

In this Court's March 18, 2013 Contempt Order, Defendants were put on notice that they would be required to "pay a compensatory fine equal to the costs and expenses incurred by [Plaintiff] in investigating this matter" and would also be required to "pay for the costs and expenses of an

independent auditor to review the produced records to determine the total amount of unpaid overtime." (Contempt Order at 2).

In support of its estimation of investigative costs of $92,746.46, Plaintiff submitted an affidavit of Susan B. Jacobs, an attorney for the DOL, who attaches the hours worked and hourly rate of the six investigators needed to investigate the ten nursing home facilities operated by Defendants over the past five years. (Mot. at 12-13) (citing to Susan B. Jacobs Decl.). In addition to investigative expenses, the Secretary seeks $4,641.67 in compensation for the cost of hiring an outside contractor to convert the unorganized records received from Defendants into searchable documents and for a copy of Defendant Konig's deposition transcript. (Mot. at 13) (citing Jacobs Decl. ¶¶ 23-24). Plaintiff has produced receipts of these expenses. (Jacobs Decl., Exhs. 3-4).

This Court finds these costs reasonable in light of Defendants' failure to produce complete, organized records for the time period at issue, the initial delay in Defendants' failure to produce *any* records, and the need for multiple investigators to report on the ten nursing home facilities operated by Defendants.

## CONCLUSION

For the reasons stated above, this Court will grant Plaintiff's Motion for an Order Awarding Back Wages and Compensatory Fine. An appropriate Order accompanies this Opinion.

DATED:  November ___, 2015

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE